FINDINGS OF FACT AND CONCLUSIONS OF LAW
LUHRING, J.
This is a bill of interpleader by the Shenandoah Life Insurance Company against the defendants, praying that they be required to interplead and settle and adjust among themselves their rights or claims to the proceeds of two *100 matured policies of insurance issued upon the life of one Ida R. Hunter, deceased, in the sum of $1000 each.
By authority of a decree of interpleader dated November 28th, 1934, the plaintiff paid into the registry of this court the sum of $2000 and was dismissed from further prosecution of the cause. The defendants have interpleaded and final hearing has been had upon the issues thus presented.
Before proceeding to findings of fact, the court will here dispose of objections made by the defendant, Edward L. Hunter, individually and as trustee, to questions propounded to certain witnesses with reference to conversations had by the witness with Ida R. Hunter, deceased, and others, involving hearsay, and which objections were at the time taken under advisement. The court now sustains the objections, and all such evidence is stricken and will not be considered.
FINDINGS OF FACT
Ida R. Hunter, the insured, died on the 5th day of August, 1934, leaving her surviving, her husband, the defendant, Edward L. Hunter, and three children, Leo Hunter, Yvonne C. Hunter and Robert Hunter II, respectively ten, seven and six years of age.
During the year 1931 and until her death, Mrs. Hunter was employed as a clerk in the United States Department of Agriculture in the City of Washington, District of Columbia, and, as such employee, she became a member of the U. S. Department of Agriculture Beneficial and Relief Association, the primary purpose of which was to obtain,insurance benefits for its members. This insurance was carried by the Shenandoah Life Insurance Company in two policies, numbered 51-Gr and 75-Gr, respectively, whereby the Company agreed, upon the death of a member of the Association, to pay to the named beneficiary the amount named in the *101 certificate issued to the member. This insurance is what is commonly known as group insurance.
Two certificates were issued to Mrs. Hunter, each for the sum of $1000, and numbered 8760-51-G and 8760-75-G. As originaly issued, Certificate 8760-51-G named the defendant, Edward L. Hunter, the sole beneficiary. In Certificate 8760-75-G, the children were designated originally as beneficiaries in this manner: “Leo Hunter, Robert Hunter II (sons) and Yvonne C. Hunter (daughter) share and share alike, survivors or survivor. ’ ’
The right to change the beneficiary was expressly reserved to the insured in the certificates issued. It is therein provided that “The beneficiary may be changed from time to time, such change to take effect upon receipt by the Shenandoah Life Insurance Company of due application for such change, and upon endorsement by the Insurance Company covering the change on the member’s certificate.” Article IV, Sec. 4 of the Constitution of the Association makes provision for change of beneficiary as follows:
“Any member desiring to change his or her beneficiary may do so at any time by executing the prescribed form which shall be furnished on request by the Secretary-Treasurer. . . .”
The policy issued to the Association wherein the Company insured the life of the members of the Association provided for a change of beneficiary as follows:,
“Any member while insured hereunder may, from time to time, change the beneficiary by filing written notice thereof at the Home office of the Company, accompanied by the Certificate covering the insurance hereunder on such member. Such change shall take effect upon endorsement covering the change of beneficiary on such Certificate by the Company, and not before. ...”
There was no change of beneficiary until the 27th day of July, 1934, when the Company, acting upon the purported request of Ida E. Hunter on the form prescribed, accom *102 panied by Certificate 8760-75-G, changed the beneficiary originally named in such' certificate, that is the children, as follows: “To Edward L. Hunter, Trustee for Leo Hunter and Robert Hunter II, sons of the insured, and Yvonne C. Hunter, daughter of the insured.”
Mrs. Hunter did not sign such request. She was advised of the change of beneficiary in a letter from J. M. Kemper, Secretary-Treasurer of the Association, under date of July 30, 1934, returning Certificate 8760-75-G- to her. This letter was delivered to her on the morning of July 31st, 1934.
The defendant, Edward L. Hunter, admits that he obtained the form for change of beneficiary from Mr. Kemper, the Secretary-Treasurer of the Association, and “filled it in” at his own office. He testifies that one Conway W. Cook went with him to his home and stood in the hallway when Mrs. Hunter signed the request. He also testifies that a Mrs. Lee, the housekeeper, was there when he and Cook arrived. The request appears to be signed by Conway W. Cook as a witness.
The signatures of Mrs. Hunter, appearing on the requests dated August 1st, 1934, are strikingly similar arid were made by her. There is a marked difference between these signatures and the signature on the request designating Hunter, trustee, as beneficiary. Handwriting experts, aided by photographic enlargements of the disputed signature, testify that such signature was not in the handwriting of Mrs. Hunter. With this conclusion, the court is in accord. When asked why he made the change of beneficiary, Hunter said the children were small and he could then spend the money as he saw fit, and that “I thought to save court costs, probate fees, etc. and going through any red tape if the kids needed the money for any needful purpose. ” It is to be noted also that neither Mr. Cook nor Mrs. Lee was called as witnesses on behalf of the defendant Hunter.
*103 On August 1st, 1934, Mrs. Hunter executed proper and formal requests on blanks provided therefor by the Company for change of beneficiary in Certificate 8760-51-G- and for change of beneficiary named in Certificate 8760-75-Gr, wherein she requested that the beneficiary in such certificates be changed to ‘ ‘ Thomas J. Reilly and William J. Byrne, joint trustees.” These requests, together with the certificates, were delivered to J. M. Kemper, Secretary-Treasurer of the Association, and were mailed to the home office of the Shenandoah Life Insurance Company at Roanoke, Virginia, on the 3rd day of'August, 1934, during business hours. There is no direct testimony as to when the requests and certificates reached the office of the Company at Roanoke, but it is common knowledge that the course of the mails is such that a letter deposited at Washington, D. C., during business hours on Friday, August 3rd, 1934, will reach Roanoke, Virginia, Saturday morning, August 4th, 1934, and will be delivered to the addressee on the first delivery.
After the designation of the defendants, Reilly and Byrne, joint trustees, as beneficiaries, and on the 4th day of August, 1934, Mrs. Hunter entered into a trust agreement with them whereby it was agreed that they should receive the proceeds of this insurance and hold the same upon the following trusts:
“First. — If the husband, Edward L. Hunter, is not financially able to pay the expense of the last illness and funeral of the party of the first part, then the Trustees may, in their sole discretion, pay out of the proceeds of the aforesaid life insurance policies, the reasonable costs incident to such illness and further pay funeral expenses not to exceed Four Hundred Dollars ($400.00) including burial lot.
“Second. — The entire proceeds of the aforesaid life insurance policies, or, in the event the aforesaid costs and expenses should be paid by the Trustees, the balance of such proceeds shall be divided into three equal parts, and each part shall be deposited as soon as possible in the Per *104 petual Building Association, 11th & E Streets, N. W., Washington, D. C., in three separate accounts, one account for the benefit of each of the three children of the party of the first part, namely: Leo Hunter, Jr., now ten years of age; Yvonne C. Hunter, now seven years of age; and Robert Hunter, The II., now six years of. age; each of said accounts to be in the names of Thomas J. Reilly and William J. Byrne, as joint trustees for the benefit of the child in whose name the account is so set up, so that the proceeds or the balance of said life insurance policies will'be divided and deposited equally in each account.
“Third. — The Trustees or their sucessors shall have full authority and power to apply both the income and all or any part of the corpus of the aforesaid trust funds or proceeds, or so much as they in their discretion deem sufficient or proper in, for, or towards the maintenance, education, advancement, or otherwise for the benefit of the aforesaid children, in such maner as they, in their discretion, deem just and proper.
“Fourth. — -The Trustees, upon the arrival of any child at his or her majority, shall pay to such child any balance remaining in his or her trust account at that time. Should any child die before reaching his or her majority, the Trustees are hereby authorized to pay in their discretion the debts and funeral expenses of such child, and the balance, if any, remaining in his or her trust fund shall be deposited equally in the accounts of the survivors or survivor, or distributed to them if the survivors or survivor have arrived at their majority.”
At the time Mrs. Hunter signed and executed the requests for change of beneficiary and when she signed and executed the trust agreement, she was suffering from cancer of the breast, and had been confined to her bed since the 18th day of July, 1931. However, she had the mental capacity to understand and did understand the business she was about and the amount of the insurance she carried, and the names and ages of her children, and their needs. At that time she was fully capable, mentally and otherwise, to execute a valid deed or contract. Furthermore, in making *105 the change of beneficiaries and in entering into the trust agreement she was acting freely and of her own volition and was not unduly influenced. Her thoughts were of her children and their welfare. That was the motivating influence that prompted her to do what she did do.
The changes of the beneficiaries as requested were not made or accomplished by the Shenandoah Life Insurance Company prior to the death of Mrs. Hunter. She died, as we have stated, Sunday morning, August 5th, 1934.
CONCLUSIONS
The defendant, Edward L. Hunter, individually and as trustee, claims the proceeds of both certificates. The defendants, Reilly and Byrne, as joint trustees, make a similar claim. Hunter contends that since no change of beneficiary was endorsed upon the certificates, his rights as the designated beneficiary therein became vested immediately upon the death of Mrs. Hunter. On the other hand, the defendants, Reilly and Byrne, joint trustees, insist that since Mrs. Hunter had done all that she was required to do to change the beneficiaries, equity will regard the change as actually made.
The court will take judicial notice of the approximate time required for the transportation of the mail between two places and its delivery in due course to the addressee. 23 C. J., Sec. 1879, p. 96; Bashara v. Hopkins, 295 Fed. 319; Aetna Ins. Co. v. Fuller Co., 111 Md. 321, 338; National Masonic Accident Assn. v. Seed, 95 Ill. App. 43, 50; Cory v. Woodman Accident Co., 253 Ill. App. 20, 29; German American Bank v. Cramery, 184 Mo. App. 481, 482; News Syndicate Co. v. Gatti P. S. Corp., 256 N. Y. 211, 214; Williams v. Brown, 65 N. Y. Sup. 1049, 1050; Fitzpatrick v. Papa, 89 Ind. 17, 20; Pearce v. Langfit, 101 Pa. St. 507, 511-512.
The requests for changes of beneficiary of August 1st, *106 1934, addresed to the home office of the Shenandoah Life Insurance Company, Roanoke, Virginia, were mailed in the City of Washington during business hours on Friday,'August 3rd, 1934. The court will take judicial notice that the requests reached the home office of the Company on Saturday morning, August 4th, 1934, before the death of the insured.
The defendant, Hunter, individually and as trustee, although designated as a beneficiary, had no vested interest in the certificates until the death of Mrs. Hunter, the insured. During her lifetime she had the right to change her designations of beneficiaries at will, and even against the consent of such beneficiaries. This right was secured to her by the provisions of the Group Policies, and by the Constitution of the Association of which she was a member. Indeed the right to make such change at any time was provided for in the certificates. Supreme Council v. Behrend, 247 U. S. 394; Supreme Conclave v. Capella, 41 Fed. 1; Berleley v. Harper, 3 App. D. C. 308; Quist v. Western and Southern L. Ins. Co., 219 Mich. 406.
The general rule with respect to the changes of beneficiaries of insurance under certificates, such as are here considered, is that the change must be made in the manner pointed out by the policy and the constitution and by-laws of the Association, of which the insured is a member. There is, among several, one outstanding exception to this general rule, and that is: If the insured has pursued the course pointed out by the policy and the constitution and by-laws of the Association, and has done all in his power to change the beneficiary, but, before the change is actually made or a new certificate is actually issued, he dies, a court of equity will treat such change or certificate as having been made or issued. This rule of courts of equity in such cases is based upon the maxim, Equity regards that as done which ought to be done. Berleley v. Harper, supra; Supreme *107 Conclave v. Capella, snpra; Reid v. Durboraw, 272 Fed. 99; Sourwine v. Supreme Lodge, 12 Ind. App. 447, 451-453; Isrigg v. Schooley, 125 Ind. 94; John Hancock Mut. L. Ins. Co. v. Bedford, 36 R. I. 116.
During her lifetime, Mrs. Hunter, exercising her right to make a change of beneficiaries, fully complied with the rules and regulations with respect thereto as set out in the Group Policies and the Constitution of the Association. She executed the requests on the forms prepared therefor by the Company; she caused these requests and the accompanying certificates to be mailed to the home office of the Company, and these documents were duly received by the Company. This was all accomplished during her lifetime. There was nothing more for her to do. It was for the Company to perform the purely ministerial act of endorsing the change on the certificates. It had no discretion in the matter. Hers was the right to have a change of beneficiary. It was the duty of the Company to make the change. The Company has paid the proceeds of the certificates into court ; it makes no question as to its liability to pay the money. As was said in Quist v. Western & Southern L. Ins. Co., supra, page 409:
. “If the provision that the change of beneficiary should not take effect until indorsement thereof on the policy by the company was a material part of the contract, by way of providing evidence of the insurer’s consent to such change, ... it called for no more than a ministerial act on the part of the company, for the insured had right of change of beneficiary and the insurer was bound to note the change requested by indorsement upon the policy. When an insured has done all he can to make the change of benefieiary effective and the company assents thereto an abrogated beneficiary has lost all interest under the policy. Stipulated formalities may be waived.”
It must be held, therefore, that the defendant, Thomas J. Reilly and William J. Byrne, joint trustees, are the bene *108 ficiaries of Certificate 8760-51-G- and Certificate 8760-75-G, and entitled to the proceeds thereof as represented by the fund of $2000 deposited in the registry of the Court, less proper charges, and that they are entitled to a decree therefor.
They are required to execute a joint bond for the faithful performance of their trust in the sum of $1000.
The defendant, Hunter, will pay the costs herein.
Counsel will prepare proper decree.