KANNER et ux. v. STARTZ et al.   (No. 5981.)

(Court of Civil Appeals of Texas.  San Antonio.
April 17, 1918.  Rehearing Denied
May 15, 1918.)

1. PLEADING ⟐236(3) — AMENDMENT — DIS-
CRETION.
    It was not an abuse of discretion for the
court to permit defendant's trial amendment to
be filed, plaintiff not claiming surprise, nor ask-
ing for a continuance, nor showing any injury.

2. DEEDS ⟐58(1)—DELIVERY—ACTS CONSTI-
TUTING.
    In an action to cancel certain conveyances
forming part of an exchange of lands, where
both parties left their deeds with a third party
to have revenue stamps attached, such action
held to constitute an actual delivery of the deeds
to the respective parties entitled to them.

3. ESCROWS ⟐8(2)—DEEDS—REVOCATION.
    An escrow agreement cannot be revoked by
one of the parties.

4. DEEDS ⟐48—EFFECT—FAILURE TO AFFIX
REVENUE STAMPS.
    A deed otherwise complete passes title, al-
though revenue stamps are not affixed thereto.

5. ESCROWS ⟐1 — WHAT CONSTITUTES — DE-
LIVERY FOR SPECIAL PURPOSE.
    Delivery of a deed to a third party for the
purpose of having revenue stamps affixed does
not constitute a placing of such deed in escrow.
    [Ed. Note.—For other definitions, see Words
and Phrases, First and Second Series, Escrow.]

6. DEEDS ⟐58(1)—DELIVERY—DELIVERY TO
THIRD PARTY.
    Where conveyances executed pursuant to an
exchange of lands were placed in the hands of a
third party to have revenue stamps affixed, after
which they were to be delivered to the parties
entitled to them, that one of the parties upon
the holder's refusal to make delivery took pos-
session of his deeds by force, did not impair
their validity; delivery of the deeds having been
complete when placed in the hands of the third
person.

7. APPEAL AND ERROR ⟐742(1) — ASSIGN-
MENTS OF ERROR—FORM.
    An assignment of error not submitted as a
proposition, so that the reasons relied on to
show that the judgment is erroneous are left to
surmise, will not be considered.

8. APPEAL AND ERROR ⟐1054(3) — ASSIGN-
MENTS OF ERROR—ADMISSION OF EVIDENCE.
    On appeal from a judgment, an assignment
of error as to the admission in evidence of a
contract because of its uncertainty will not be
sustained, where it appears that the judgment
did not rest upon such contract.

9. APPEAL AND ERROR ⟐1053(7)—REVIEW—
CURE OF ERROR.
    Where a contract is introduced in evidence
to support a defendant's cross-action, error, if
any, in the introduction of such evidence, is
rendered harmless, where the cross-action was
dismissed.

10. APPEAL AND ERROR ⟐1042(1)—REVIEW
—HARMLESS ERROR.
    In a suit to cancel conveyances of real es-
tate given in the consummation of a land deal,
wherein plaintiffs alleged that one of the deeds
of trust partly covered their homestead, but
failed to show boundaries of their homestead,
a judgment dismissing the issue of homestead,
and sustaining the conveyance, did not harm
plaintiffs, where they were given another oppor-
tunity to make proof of their homestead in any
subsequent proceeding to foreclose the trust
deed.

Appeal from District Court, Bexar County;
R. B. Minor, Judge.

Action by H. Kanner and wife against A.
G. Startz and others, consolidated with an
action by A. G. Startz against Kanner and
others.  From an adverse judgment, plain-
tiffs H. Kanner and wife appeal.  Affirmed.

R. H. Ward, J. H. Bickett, Jr., and S. C.
Eldridge, all of San Antonio, for appellants.
Guinn & McNeill, of San Antonio, for ap-
pellees.

MOURSUND, J.  H. Kanner and wife, Re-
becca Kanner, sued A. G. Startz, J. C. Yantis
and wife, Susie Yantis, L. Jones, and Leonard
Brown, on November 16, 1915, alleging that
on September 8, 1915, plaintiff H. Kanner en-
tered into a written agreement with A. G.
Startz and L. Jones, whereby Startz was to
sell Kanner certain cattle, personal property,
and lots, and Kanner was to convey to Startz
certain real estate, and Jones was to receive
a conveyance from Startz of certain real es-
tate, as his commission for negotiating the
trade between Startz and Kanner, and be-
tween Kanner and Yantis; that a verbal
agreement was made to the effect that the
sales and conveyances heretofore mentioned
were conditioned on the purchase by Yantis
of the property Kanner was to receive from
Startz; that on the same day Kanner made
an agreement with defendant Yantis, acting
through his agent, L. Jones, wherein Kanner
was to convey to Yantis the lots and cattle
to be received from Startz for $19,000, pay-
able by conveyance of certain real estate and
the execution of a note for the balance, se-
cured by lien on the real estate to be con-
veyed by Kanner.  The terms of the various
trades were complicated, and need not be set
out.  Plaintiffs alleged that it was agreed
that all abstracts should be brought down to
date, and all papers and abstracts deposited
with Leonard Brown, an attorney at law, who
should draw up the instruments necessary
to carry out the contracts; that about Sep-
tember 14, 1915, Kanner, Startz, and Jones,
went to Brown's office for the purpose of pre-
paring the necessary instruments, but aban-
doned said written agreements and entered
into verbal agreements with reference to the
sale and trade between said parties, and
agreed that the trade between Startz and
Kanner, and between Kanner and Yantis,
were to be conditioned upon the successful
consummation of both trades.  Plaintiffs
then alleged the terms of the verbal contract
between Startz and Kanner, and between
Kanner and Yantis; that he executed various
instruments for the purpose of carrying out
his part of the contracts, and that all instru-
ments were executed except a deed by him to
Startz and by Startz to L. Jones of certain
real estate Jones was to receive as commis-
sion; that it was agreed that the instruments
so executed were to be held by said Leonard

Brown in escrow, and not to be delivered, unless the deal with Yantis was consummated; that Yantis did not complete his abstracts; that no instruments were executed either by Kanner or Yantis carrying out the agreement between them, but certain instruments had been executed and left with Brown by Yantis, which were not in conformity with the terms of the trade; that while the papers relating to the Yantis deal were still in an incomplete state, and according to the agreement of the parties no instruments in Brown's hands could be delivered until all matters were finally determined and agreed upon, Startz went to Brown's office, and by fraud and deceit and by force and without the consent of Brown or Kanner unlawfully took possession of the papers by Kanner to Startz and placed same on record. Plaintiff Rebecca Kanner alleged that certain real estate was her homestead at the time Kanner executed a deed of trust thereon to secure a note for $2,000 to Startz, and that said deed of trust was void. She prayed that the deed of trust be canceled for that reason.

The plaintiffs prayed for cancellation of all the instruments secured by Startz from Brown, and for removal of clouds upon real estate caused by the recording of the instruments relating thereto; also for the cancellation of all instruments still held by Brown.

On January 12, 1916, Startz sued H. Kanner, J. C. Yantis, Susie Yantis, and L. B. Randall in the district court of the Seventy-Third district, of Bexar county, and said cause was transferred to the district court of the Forty-Fifth district, and consolidated with the suit brought by the Kanners. This suit was based upon three vendor's lien notes executed and delivered to Startz by J. C. Yantis, for $1,000, $800, and $1,700, respectively. Startz sought to foreclose the vendor's liens on the various lots for which said notes had been given, and to hold Susie Yantis upon her contract of assumption of the first three notes, and H. Kanner on contracts of assumption of all of said notes. He alleged that Randall claimed under a deed of trust by Yantis, and that his liens were superior to that of Randall.

After the consolidation of the suit Startz answered the Kanners' petition by general demurrer, special exceptions, and general denial. He then, by way of cross-action, complained of Kanner and wife, Yantis and wife, and L. Jones, alleging the execution of the written contract between himself and Kanner made September 8, 1915, and that it had not been abrogated by any subsequent verbal agreement, but if any subsequent oral or written agreements had been made the same were of a minor and immaterial nature, and were embodied in the instruments thereafter executed in consummation of the contract between Kanner and Startz and deposited with Brown. He specially denied that the contract was in any way dependent or conditioned upon the contract between Kanner and Yantis. He described the various instruments which had been placed with Brown. As to the property described in Kanner's petition as that which was to be conveyed to Startz and by Startz to Jones in payment of commissions, he alleged that it was subsequently agreed that Kanner should convey same directly to Jones. He alleged the full compliance of himself and Kanner with the terms of the contract, by the execution and delivery of the instruments, and that the instruments were left with Brown solely for the purpose of placing the necessary revenue stamps thereon, and that both parties had authorized Brown to attach and cancel said stamps and hand such instruments to the party to whom they had already been delivered, respectively; that when he returned for his instruments so executed and delivered to him by Kanner, Brown refused to hand the same to him, stating that Kanner had instructed him not to do so; that afterwards Kanner agreed with Startz that if Startz would give him a credit of $500 on a certain note and cancel another $500 note, he (Kanner) would pay Startz $500 and withdraw his instructions to Brown not to let Startz have said instruments; that Startz agreed to this in order to avoid further trouble and the expense of litigation; that such agreement was without consideration and was obtained by fraud, but Startz met Kanner at Brown's office on September 17, 1915, for the purpose of complying therewith, and Kanner failed and refused to comply therewith and to permit Brown to deliver such other instruments; that thereupon he took possession of such instruments and placed same of record. He also pleaded that Kanner on the 17th and 18th of September, 1915, after such instruments were placed of record, ratified and confirmed all of the same and the former delivery thereof, and delivered possession to Yantis of the cattle and real estate purchased from Startz.

He pleaded further that he had made certain payments on notes assumed by him, and had paid taxes and interest, which under the terms of the contract Kanner was to pay; that Kanner had withheld the possession of all the properties conveyed to him; and that he (Startz) was entitled to recover $100 per month as the reasonable value of the rents and revenues therefrom. He also alleged that Kanner had represented that the premises, claimed in plaintiffs' petition to be the homestead, did not constitute the Kanner homestead, and that Mrs. Kanner knew of such representations; that by reason thereof they were estopped to assert that the premises in fact constituted their homestead. He prayed that if the deed of trust should be canceled he have judgment against Kanner for the amount of the note. He also prayed that the instruments from Kanner to him be declared valid; that he

have judgment for rents, revenues, interest, and for removal of cloud upon his title to the real estate claimed by him under the instruments executed by Kanner. In the alternative he prayed for damages in the sum of $19,000, the alleged value of the property received by Kanner from him, and alleged to have been disposed of.

Plaintiffs filed a supplemental petition, in answer to Startz's pleading, containing special exceptions, a general denial, special denials, and allegations that the real facts were as pleaded by them. Startz filed a trial amendment alleging his willingness to comply in every respect with his agreement, and that he consented to the memoranda of agreement dated September 17, 1915, signed by him and Kanner, by which he agreed to cancel one note for $500 on the terms and conditions set out in the memoranda. He tendered the note into court, and withdrew his allegations that it was without consideration and obtained by fraud. He further alleged that he would at all times have been willing to cancel said note had Kanner complied with or offered to comply with said agreement. J. C. Yantis answered, and by cross-action sought specific performance of the contract with Kanner, and in the alternative the recovery of damages for its breach. As the court dismissed plaintiffs' suit against Yantis and Yantis' cross-action, it will not be necessary to state the allegations of Yantis' cross-action.

L. Jones' answer consisted of general demurrer, general denial, and a cross-action against Kanner, alleging that as the agent of Kanner and Startz he negotiated the exchange of the properties mentioned in the written contract between them, and became entitled to the usual and customary commission, and that it was agreed between Kanner, Startz, and this defendant that Kanner should convey him certain property in payment of the commissions due by Kanner and Startz; that Kanner failed and refused to make such conveyance. He also alleged that Kanner owed him $812.50 as commission for procuring the exchange of Kanner's property with Yantis, as shown by the agreement between them. He sought specific performance of the contract to convey him the property, and for the rental value thereof while it was withheld by Kanner, and in the alternative prayed for judgment for his commissions on both deals, with interest.

Plaintiffs' answer to L. Jones' pleading consisted of a general demurrer, a general denial, and allegations that the facts were as set out in their original and supplemental petition. Plaintiffs filed a trial amendment for the purpose of obviating various objections made by way of special exceptions. Among other things they described the various contracts and instruments they sought to annul, and stated additional details concerning the agreements they claimed were made, and the various particulars in which they contended the instruments prepared and left with Brown failed to carry out the agreements actually made. They again alleged that the trades between Kanner and Startz and Kanner and Yantis were each dependent upon the other, and that Jones' commissions were dependent upon the closing of all of said trades. Plaintiffs filed a second trial amendment containing a general demurrer and special exceptions to Startz's trial amendment, a general denial, a plea that if any contract was made as therein alleged, that the same was not in writing, was indefinite, lacked description of property, and was void and contrary to the statute of frauds. They further alleged that the original contract of Startz with Kanner and L. Jones, and of Kanner with Yantis, both made September 8, 1915, were void for vagueness, indefiniteness, and insufficiency of description, and not sufficient to support an action for specific performance.

The consolidated cause was tried without a jury and judgment rendered that Kanner and wife take nothing as against Brown and Jones; that they take nothing as against Startz on their plea for injunction, damages, and the annulment of contracts, deeds, deed of trust and notes, executed or assumed respectively by Kanner in favor of Startz, and for removal of cloud upon the title to the properties described in said instruments, but without prejudice to any rights of Kanner and wife to assert their defense of homestead in any subsequent suit or proceedings to foreclose the said deed of trust by Startz or the holder of the said $2,000 note, and without prejudice to any right of Startz to controvert such homestead claim. It was further decreed that instruments executed by and between Kanner and Startz, except the cattle note No. 1 for $500, are valid and binding obligations and conveyances, and that Startz recover from Kanner the title and possession of the real estate in the city of San Antonio, described as lot 17, block 8, new city block 1800, the east 42 feet of lot 20, block 4, new city block 2209, the west 14 feet of lot 19, and east 30 feet of lot 18 in block 4, new city block 2209, lot 15, block 112, county block 4061 in San Jose addition to the city of San Antonio, in accordance with the stipulations expressed in the deeds from Kanner to Startz; also that Startz recover of Kanner $1,053 for rents on said properties, with interest from date of judgment. The cattle note No. 1 for $500 was canceled. It was decreed that the Kanners take nothing on their prayer for damages, and that Startz takes nothing against Kanner on that portion of his cross-action praying for damages caused by clouding of title.

The judgment awarded Jones $819 as rents on the Perez street properties, $552.50 as commission on the Yantis contract, specific performance of the contract between Kanner and Jones, and that Kanner execute and deliver to Jones a general warranty deed

conveying him the parcels of land in the city of San Antonio designated as Nos. 933, 935, and 987 Perez street, said premises being fully described in the judgment, and it being provided that Jones was to be liable for the incumbrance of $2,500 against said premises, with interest thereon from September 8, 1915, and that the deed should contain a stipulation that Jones assumed the payment of such debt. It was further decreed that Startz recover of Yantis $4,690, with interest, and foreclosures of liens as against Yantis, Mrs. Yantis, and Kanner, in accordance with his prayer in his suit consolidated with Kanner's suit; that any cloud upon the title to said lands by reason of any interest or claim Randall may have had be annulled and removed. All causes of action asserted by the Kanners against Yantis and by Yantis against them were dismissed. The costs growing out of the cause of action asserted against Yantis by Startz were adjudged against Yantis. All other costs were adjudged against Kanner. The Kanners alone appealed.

[1] Assignments 1 to 16, inclusive, except such of them as are expressly waived, relate to rulings on general demurrers and special exceptions to the pleadings of Startz and Jones. The pleadings attacked were not subject to general demurrer, and if any injury was suffered by reason of the rulings complained of with respect to special exceptions, the same is not made to appear by anything contained in the statements under the assignments. The court did not abuse the discretion vested in him by permitting the filing by Startz of his trial amendment. Plaintiffs did not claim surprise, nor ask for a continuance, or show any injury sustained by reason of the ruling. Merchants' Ins. Co. v. Reichman, 40 S. W. 831; Davis v. Farwell Co., 49 S. W. 656. The assignments mentioned are all overruled.

By the seventeenth assignment it is contended the court erred in denying all relief to plaintiffs as against Startz. The proposition submitted, and the only one relied on, raises the issue whether or not the contract between Kanner and Startz was dependent or conditioned upon the contract between Kanner and Yantis. The evidence supports a finding that the contract between Kanner and Startz was not in any way conditioned or dependent upon the contract between Kanner and Yantis. Plaintiffs pleaded that the agreement concerning the dependency of the contract was not embraced in the written contract, that a separate contract was made verbally to that effect, and that it was made a part of the verbal contract which he contended supplanted the written contract. These averments were contradicted by Startz, who was corroborated by several witnesses. The same proposition is submitted under assignments 24, 26, 29, and 34, but under assignments 26 and 34 certain other propositions are urged, which will be disposed of by the following findings of fact. The trade between Kanner and Startz, as finally agreed on, was evidenced by written instruments, such as deeds, deed of trust, and notes, all of which were duly executed and ready for delivery, when the suggestion was made that internal revenue stamps were required to be attached thereto. Startz testified he left the deeds he got from Kanner with Brown, and that Kanner also left his with Brown for the purpose of having the necessary stamps attached.

[2] This testimony indicates an actual delivery, and the placing of the instruments with Brown by the respective grantees, but there are statements in his testimony which indicate that when the instruments had all been properly executed, and were ready for delivery, the respective grantors, Kanner and Startz, placed all of same in the hands of Leonard Brown, with instructions to place revenue stamps thereon and cancel same, and then deliver to each the instruments he was to receive under the terms of the trade. Brown placed the stamps on the instruments and canceled the same. Startz took possession of the instruments he was to receive, and recorded the deed and deed of trust. It is contended that he did so wrongfully and fraudulently. Kanner after making such agreement told Brown not to deliver the instruments until he gave further instructions.

[3, 4] An escrow agreement cannot be revoked by one of the parties, but, strictly speaking, the instruments were probably not held in escrow. The instruments were complete without affixing the revenue stamps. Ruling Case Law, vol. 8, p. 943; Watson v. Mirike, 25 Tex. Civ. App. 531, 61 S. W. 538.

[5, 6] If the grantor execute a deed and deposit it with a third person, until there may be an opportunity for acknowledging it, whereupon it is to be delivered to the grantee, it is not an escrow. The refusal of the grantor to acknowledge the deed will not avoid it. Devlin on Real Estate (3d Ed.) § 333; note to Wilkins v. Somerville, 130 Am. St. Rep. 957; Ruggles v. Lawson, 13 John. (N. Y.) 285, 7 Am. Dec. 375. The instruments were effective to pass title without the stamps, and if the agreement had been for Kanner to put the stamps on the conveyances executed by him, and he had refused to do so, we fail to see how he would have been in any better position than if the agreement had been that he was to acknowledge the same, and he had failed to do so. In this case the agreement was that Brown was to place the stamps on the instruments and cancel the same. He did so. Startz was entitled to the instruments he took. He could have secured the aid of a court of equity to compel Brown to deliver same to him. His act in taking the same could not impair their validity any more than it could

give them validity, if no delivery recognized by law as sufficient had been made.

In view of the foregoing conclusions, it is apparent that it is immaterial as between Startz and Kanner whether the original written contract between them was sufficient under the statute of frauds. Their final contract, completed by a legal delivery, was evidenced by the instruments executed by them and placed in Brown's hands.

Under the thirty-fourth assignment the additional proposition is made that when the court by its decree enforces specific performance in favor of Startz as to the Kanner-Startz contract, it should require Startz as a condition precedent to the granting of such relief to do all things required of him under his contract. As we understand the judgment the court did not decree specific performance of the contract, but decreed that there had been a valid delivery of the instruments in question, and declined to cancel same. The contention is that Startz did not deliver the cattle to Kanner, but the testimony supports a finding that Kanner directed Startz to deliver the same to Yantis, and that this was done. The delivery of the instruments and closing of the trade was not made dependent on the delivery of cattle to Kanner, because he had directed that they be delivered to Yantis. The proposition does not constitute a contention that Kanner is entitled to rescind on account of the dealings of Startz with reference to the cattle, or that he is entitled to damages on account thereof, nor are any pleadings pointed out in the statement wherein any such issue is raised. The assignments mentioned are all overruled.

[7] By the nineteenth assignment complaint is made of that part of the judgment in favor of Startz declaring the instruments valid and awarding him the real estate described in the deeds from Kanner to him. The assignment is attempted to be submitted as a proposition, but it is not a proposition, and we are left to surmise what reasons are relied on to show that the judgment is erroneous. The same method of briefing is used with regard to the twentieth and twenty-first assignments of error. These assignments will not be considered.

By the twenty-second, twenty-third, and thirty-third assignments complaint is made of the judgment in favor of L. Jones. The only proposition urged is that where the payment of commissions is dependent "upon the consummation of mutual deals, and the deals are not consummated, and the payments of commissions are further dependent on the performance of certain acts by the agent, which he fails or refuses to perform, then he is not entitled to his commission." The so-called proposition embraces two distinct contentions. The first is that the payment of commissions was dependent upon the consummation of mutual deals, which were not consummated, and therefore the judgment is erroneous. In the statement it is asserted that the undisputed evidence shows that the contracts were mutually conditioned on each other. The statement is not sufficient and is not aided materially by the reference to the statement under the seventeenth assignment. The testimony supports a finding that the Kanner-Startz contract was not conditioned upon the consummation of the Kanner-Yantis contract. There is no evidence pointed out which shows that Jones was not to receive a commission on the Kanner-Startz deal, unless the deal between Kanner and Yantis was consummated. The second contention embraced in the proposition is that when the payment of commissions is dependent on the performance of certain acts by the agent, which he fails or refuses to perform, he is not entitled to commission. In the statement it is asserted that Jones' commission was dependent on the assumption and payment by him of a lien on certain property, and that in the deed made to Mary K. Jones by Kanner, at Jones' request, Jones did not assume or make the payments on the houses he was to get as his commission. Jones was to assume the payment of a certain note. Kanner did not insist on making deed to Jones, in order to recite therein that Jones assumed the payment of the note, but consented to a deed being drawn conveying the land to Mary K. Jones, subject to the lien evidenced by the note. Kanner declined on other grounds to sign the deed. It does not appear that Jones ever refused to assume the payment of the note. The judgment requires that he do so. There is no merit in the contention that Jones would be precluded from recovering a commission by reason of his failure to assume the note. The assignments are overruled.

By the twenty-fifth assignment complaint is made of the judgment in so far as it orders "that Yantis pay all costs of court growing out of the cause of action asserted against him in former suit B 11329, and that Kanner pay all costs herein." The court dismissed Kanner's suit in so far as it asserted a cause of action against Yantis, and dismissed Yantis' cross-action against Kanner. The cross-action related to the identical matters covered by Yantis' answer, and it does not appear that its filing caused the accrual of any costs. There could be no additional costs by reason of such cross-action. Appellants do not complain of the judgment of dismissal of their cause of action or Yantis' cross-action. They, therefore, cannot expect Yantis to pay costs caused by the filing of their suit against him, and of course cannot expect him to pay the costs incurred in the trial of plaintiffs' case against Startz and Jones. The assignment is overruled.

[8] By the twenty-eighth assignment it is contended that the court erred in rendering the judgment in favor of Startz because the contract made September 17th between Startz, Kanner, and Yantis is null and void

for want of description and on account of uncertainty of terms. The thirty-second assignment complains of the admission in evidence of said contract. The instrument in question was executed after Startz had procured and recorded the instruments executed by Kanner, and the judgment in favor of Startz does not rest upon said contract of September 17th. It is vague and uncertain, and the court was authorized to find that it was executed by Startz solely for the purpose of agreeing to cancel Kanner's obligations to him to the extent of $500 if Kanner and Yantis would agree on a trade by Kanner reducing the price of the cattle $1,000, and the expression in the contract, "subject to your deeds and paper on property to J. C. Yantis," was intended to express Startz's condition that he was not to cancel the $500 obligation, unless the Kanner-Yantis deal was consummated. It was not consummated, but nevertheless Startz in his trial amendment offered to cancel the obligation, and the court did so in the judgment. The judgment of the court does not rest upon said instrument in so far as it is in favor of Startz, and plaintiffs suffered no injury by its introduction in evidence. The assignments are overruled.

[9] By assignments 30 and 31 complaint is made because the contracts of September 8th between Kanner and Startz and Kanner and Yantis were permitted to be introduced in evidence. As to the Kanner-Startz contract, we need only say that the judgment is not founded upon the contract of September 8th, but upon the completed contract evidenced by the instruments prepared by Brown, as hereinbefore pointed out. As to the Kanner-Yantis contract we need only point out that Yantis' cross-action was dismissed, so plaintiffs were not injured by the introduction in evidence of the contract. The assignments are overruled.

There is no merit in the contention that the instruments executed by Kanner to Startz should not have been admitted. The propositions presented have been disposed of adversely to appellants in discussing other assignments. The thirty-fifth assignment is overruled.

[10] By the eighteenth assignment it is contended the court erred in failing to determine the issue between plaintiffs and Startz raised by their plea of homestead; the grounds stated in the assignment relied on to show error being that the property on Lakeview avenue and Pecos street was shown by the proof to be the homestead of plaintiffs at the time of the execution of the deed of trust thereon in favor of Startz to secure the $2,000 note, and therefore the note and deed of trust are void. The judgment of the court amounts to a dismissal of plaintiffs' suit as to the issue of homestead. The statement is a mere reference to the testimony of the witnesses, and wholly fails to show that the evidence substantiated plaintiffs' claim of homestead. It appears from appellees' statement that there were two houses situated on the property covered by the deed of trust, in one of which the Kanners had never lived, but which they had rented out up to the time the deed of trust was executed. They moved into it after this suit was begun. This house was numbered 403 Lakeview avenue. At the time the deed of trust was executed they lived in the other house which fronted on Pecos street. This house consisted of eight rooms, divided into two apartments, one being No. 502 Pecos, and the other 507 Pecos. Kanner and wife lived in one apartment and rented out the other. Both houses were on the lot at the time they made their home in the one on Pecos street. There appears to be no doubt that the house fronting on Pecos street became their home. It is evident that plaintiffs were not entitled to hold both houses as homestead property. This is not a case involving property to which the homestead character has attached, and it is contended that there has been an abandonment in part, but is a case in which the plaintiffs established a homestead only upon part of the property covered by the deed of trust, and failed to show with sufficient certainty the extent of their exemption so that the court could decide justly and fairly the extent of the invalidity of the deed of trust. Plaintiffs did not discharge the burden resting upon them of showing the boundaries of their homestead. This being the case, it appears that they have not been harmed by the judgment of the court which gives them another opportunity to make the proof they failed to make on this trial. The assignment is overruled.

The judgment is affirmed.

⬤⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes